# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **In re Ex Parte Application of** | ) | |
| | ) | |
| ELI LILLY AND COMPANY; ELI LILLY ITALIA S.PA.; ELI LILLY KINSALE LIMITED; ELI LILLY GES M.B.H., AND ELI LILLY NEDERLAND B.V. | ) ) ) ) ) | Nos. 1:21-mc-00017; 1:21-mc-00021 |
| _____ | ) ) | |
| ELI LILLY AND COMPANY; ELI LILLY ITALIA S.PA.; ELI LILLY KINSALE LIMITED; ELI LILLY GES M.B.H., AND ELI LILLY NEDERLAND B.V., | ) ) ) ) ) | |
| *Movants,* | ) ) | |
| v. | ) ) | |
| NOVARTIS PHARMA AG | ) ) | |
| *Respondent* | ) | |

## MEMORANDUM OPINION

At issue in this case is a magistrate judge's *ex parte* order granting discovery in this country for use in a foreign proceeding, ostensibly pursuant to 28 U.S.C. § 1782. Distilled to its essence, the parties' dispute focuses on the correct interpretation of § 1782's requirement that discovery for use in a foreign proceeding is permitted only of a party which "resides or is found in" the district in which the § 1782 request is made. 28 U.S.C. § 1782. The dispute as to § 1782's scope is a question of first impression, and for the reasons that follow, it is clear that Novartis—a Swiss company with no physical presence in the United States or the Eastern District of Virginia—is not "found" in this District. Accordingly, the ruling of the magistrate judge must be

1

vacated as clearly erroneous and contrary to law, and Novartis's motion to quash the subpoena must be granted.

I.

This case stems from a patent dispute between Eli Lilly and Novartis currently being litigated in various European courts. Both Eli Lilly and Novartis are competing pharmaceutical companies, and both produce drugs that are used in the treatment of psoriasis. In April 2020, Novartis purchased a portfolio of patents from a third company, Genentech. The patents in the portfolio are related to psoriasis drugs, and the portfolio contained both United States and European patents. One of the European patents in the Genentech portfolio, called EP '084, is the subject of ongoing litigation between Novartis and Eli Lilly. Specifically, Novartis has filed patent infringement suits against Eli Lilly in Ireland, Italy, Austria, and Switzerland, alleging that Eli Lilly's psoriasis drug infringes on Novartis's EP '084 patent. Eli Lilly denies that it has infringed on Novartis's patent and in its defense has asserted, *inter alia*, that Novartis has abused its dominant market position and that Novartis's acquisition of Genentech's patent portfolio violates European competition laws. Eli Lilly has not, however, initiated any action accusing Novartis of a global anticompetitive scheme or of any antitrust violation. Eli Lilly is seeking discovery from Novartis in the European actions concerning, among other things, the terms and circumstances of Novartis's patent purchase from Genentech.

In addition to its discovery requests in European courts, in June 2021 Eli Lilly initiated this action, seeking to subpoena Novartis in the Eastern District of Virginia pursuant to 28 U.S.C. § 1782 in connection with the European suits. Section 1782 provides that "[t]he district court of the district in which a person *resides or is found* may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

international tribunal." 28 U.S.C. § 1782 (emphasis added). As permitted in § 1782 applications, Eli Lilly initially proceeded *ex parte*. Eli Lilly's application sought to obtain, via a § 1782 subpoena various documents and other materials concerning the Novartis-Genentech deal, including the purchase price, the scope of rights transferred, any conditions of the sale, and internal correspondence from Novartis employees concerning Novartis's rationale for the deal and Novartis's views on the validity of the portfolio patents. On July 8, 2021, a magistrate judge granted the *ex parte* § 1782 application. *See* Dkt. 10.

After the application was granted, Novartis intervened in this case and moved to vacate the magistrate judge's order. In briefing and oral argument before the magistrate judge, Novartis explained that Novartis is a Swiss company without any presence in the United States or the Eastern District of Virginia. Novartis accordingly argued that Novartis neither "resides" in nor "is found" in the Eastern District of Virginia and that therefore the statutory requirements of § 1782 were not met.[1] Eli Lilly argued that Novartis's acquisition of the patent portfolio and pending application for those patents with the United States Patent and Trademark Office ("USPTO"), which is located in the Eastern District of Virginia, satisfied § 1782's "found" requirement. The magistrate judge agreed with Eli Lilly and denied Novartis's motion to quash the subpoena. Novartis has filed an objection to the magistrate judge's ruling, seeking review of that decision pursuant to Rule 72(a), Fed. R. Civ. P.

## II.

Rule 72(a), which the parties agree applies to this challenge of a magistrate judge's non-dispositive ruling, provides that a district judge "must … modify or set aside any part of the

---

[1] Indeed, in the course of the January 7, 2022 telephonic hearing on this objection, counsel for Novartis stated that all of the requested documents are in Europe and are not located in the United States.

3

order that is clearly erroneous or contrary to law." *Id.* An order is clearly erroneous when even though there is some evidence to support the order, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10-cv-121, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010) (internal citations omitted).

**III.**

The parties dispute whether the statutory requirement in § 1782 that a subpoena may be issued only by a "district court of the district in which a person resides or is found" is met in this case. 28 U.S.C. §1782. Both parties agree that Novartis does not "reside" in the Eastern District of Virginia. Accordingly, § 1782's requirement is met only if Novartis "is found" in this District. In this respect, the parties disagree about the meaning of "found." Novartis argues that "found" requires that the subpoenaed party have some physical presence in the district, while Eli Lilly argues that "found" refers instead to the minimum contacts necessary to permit the exercise personal jurisdiction under the Due Process Clause.

> A. *The plain meaning of "found" suggests that Congress intended § 1782 to provide for discovery from a party only where that party was physically present in the district in which discovery was sought.*

Neither the Supreme Court nor the Fourth Circuit have interpreted the meaning of "found" as used in § 1782 and the case therefore presents a question of first impression. The analysis properly begins, "as always in deciding questions of statutory interpretation, with the text of the statute." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013).

Absent a definition provided by the statute, a reviewing court is required to "give statutory terms their ordinary, contemporary, common meaning." *Othi*, 734 F.3d at 265 (citing *United States v. Powell*, 680 F.3d 350, 355 (4th Cir. 2012)). Courts engaging in statutory interpretation customarily rely on dictionary definitions to ascertain the ordinary, common meanings of statutory terms. *See, e.g.*, *In re Constr. Supervision Servs., Inc.*, 753 F.3d 124, 128 (4th Cir. 2014) (explaining that when a term is not defined in a statute, courts may consult dictionaries to ascertain that terms plain, ordinary meaning).

Novartis argues that dictionary definitions of the word "found" suggests that § 1782 requires physical presence in this District. Indeed, dictionary definitions point uniformly to the conclusion that "found" requires physical presence. For example, Novartis points to the Merriam-Webster Dictionary, which defines "find" as "to perceive (oneself) to be in a certain place" and clearly suggests that to be "found" in a place is to be physically present there. *Find*, MERRIAM-WEBSTER.COM (last visited Jan. 5, 2022), https://www.merriam-webster.com/dictionary/find.  Other dictionaries confirm that to be found in a judicial district requires physical presence in that district. *See, e.g.*, *Find*, OXFORD ENGLISH DICTIONARY (last visited Jan. 5, 2022), https://www.oed.com/view/entry/70348 (defining "find" as "to exist; to occur; to be located at a specific site"); *Find*, CAMBRIDGE DICTIONARY (last visited Jan. 5, 2022) (defining "find" as "to discover, especially where a thing or person is").

Eli Lilly did not cite or offer a single dictionary definition in support of a contrary definition, nor was any contrary dictionary definition found.  Moreover, Eli Lilly offers no argument whatsoever that the plain, ordinary meaning of "found" does not refer to physical presence. Accordingly, it is appropriate to conclude that Congress knew the ordinary, common meaning of "found" and therefore intended § 1782 to apply only to parties who are physically

5

present in the district in which discovery is sought. As the Supreme Court has instructed, "if the intent of Congress is clear and unambiguously expressed by the statutory language at issue," that marks the end of the statutory interpretation analysis. *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007).

The plain and ordinary meaning of "found" finds support in the statute's legislative history. Novartis convincingly argues that the legislative history of § 1782 also supports this conclusion. As the Supreme Court has instructed, the "statutory history sheds further light on the text" and can clarify a statute's meaning. *United States v. Quality Stores, Inc.*, 572 U.S. 141, 148 (2014).

The legislative history of § 1782 suggests that Congress intended for the statute to apply only to parties physically present in the district in which the § 1782 subpoena is requested. Section 1782 was initially passed in 1948, and the text of that original statute applied only to parties "residing" in a given judicial district. Act of June 25, 1948, Pub. L. No. 80–773, § 1782, 62 Stat. 869, 949. The following year Congress amended the statute, expanding the scope of § 1728 to include a district where the subpoenaed party "resides or is found." Act of May 24, 1949, Pub. L. No. 81–72, § 93, 63 Stat. 89, 103.  This change suggests that Congress intended to include not only parties with a permanent residence in a judicial district, but also those parties who were physically present in the district, even if only temporarily. Indeed, a House Report accompanying the 1949 amendment explained that the change was intended to "correct[ ] restrictive language in section 1782 ... and permit depositions in any judicial proceeding without regard to whether the deponent is 'residing' in the district or only sojourning there." H.R .Rep. No. 81–352, at 40 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1254, 1270. Thus, § 1782's legislative

history confirms that Congress intended § 1782 to apply in any judicial district in which a party is physically present and can therefore be "found," either as a resident or as a sojourner.

Eli Lilly's arguments that found does not entail physical presence are unconvincing. Eli Lilly does not attempt to grapple with either the plain, ordinary meaning of § 1782's text or the legislative history of the statute. Instead, Eli Lilly relies exclusively on out-of-circuit, and therefore non-binding, precedent interpreting § 1782 as coextensive with the due process limits of personal jurisdiction. *See* Dkt. 71 at 15–17. In *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), the case on which Eli Lilly principally relies, the Second Circuit rejected the argument that "found" refers to physical presence and instead held that that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d at 528. The *del Valle Ruiz* opinion is neither persuasive nor binding precedent. Notably, the *del Valle Ruiz* opinion does not consider a single dictionary definition for the term "found" and nor does the opinion appear to address the plain meaning of that term. Further, the Second Circuit acknowledged that the legislative history of § 1782 suggested that the "found" language was meant to include physical presence, but nonetheless reached a different conclusion as to the statute's reach. *Id.* As explained above, both the plain, ordinary meaning of "found" and the legislative history of § 1782 suggest that Congress intended "found" to refer to a party's physical presence, even if the party's physical presence in the district is temporary. Thus, the reasoning in the *del Valle Ruiz* opinion falls short of persuasively controverting Congress's clear intent.

Accordingly, the plain meaning of § 1782's requirement that a party "resides or is found in" the district means that the party must have some physical presence in that district.  Given this it is clear that § 1782's requirements are not met in this case, as there is no doubt that Novartis

7

maintains no physical presence in the Eastern District of Virginia and no Novartis employee has sojourned here.[2] Indeed, Novartis is a Swiss company and it has no offices and no employees in this District. Accordingly, Novartis is not "found" in the Eastern District of Virginia. To conclude otherwise and infuse the term "found" with meaning beyond its ordinary and plain meaning as Eli Lilly argues on the basis of putatively appealing policy considerations is to engage in a legislative activity rather than a judicial one. The magistrate judge's ruling that Novartis was found in this District was therefore contrary to law, and that ruling must be vacated.

> B. *Even under Eli Lilly's view that § 1782's "resides or is found in" language refers to the limits of personal jurisdiction, the requirements are still not met in this case, as there are insufficient contacts between Novartis and this District to justify the exercise of specific personal jurisdiction.*

As explained above, Eli Lilly's has failed to argue persuasively that Congress intended §1782's "resides or is found in" requirement to be satisfied wherever the requirements for specific personal jurisdiction are met. But even assuming arguendo that Eli Lilly is correct and that § 1782 extends to parties subject to personal jurisdiction, Eli Lilly has nonetheless failed to show that the requirements for personal jurisdiction are met in this case.

The Supreme Court has identified "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Eli Lilly concedes, as it must, that Novartis, a Swiss company with no permanent presence in the United States, is not subject to general personal jurisdiction in the Eastern District of Virginia.

---

[2] The parties have indicated in their briefs that Novartis's recently hired general counsel was served in this matter in Illinois, while she was packing up to move to Switzerland. This fact does not help Eli Lilly, as even if the Novartis employee was sojourning, she was doing so in Illinois and not in the Eastern District of Virginia.

Instead, Eli Lilly argues that Novartis is subject to specific personal jurisdiction in this District. This argument is unpersuasive.

The test for specific personal jurisdiction is well-settled. Rule 4(k)(1), which governs specific personal jurisdiction in federal courts, provides that a district court may exercise personal jurisdiction over a party if that party is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," in this case, Virginia. Rule 4(k)(1), Fed. R. Civ. P. An exercise of specific personal jurisdiction over a party is therefore appropriate "if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long-arm statute[3] extends personal jurisdiction over parties to the full extent permitted by due process, and accordingly "the statutory and constitutional inquiries merge into one inquiry." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1057, 208 L. Ed. 2d 525 (2021).

Supreme Court precedent "has long focused on the nature and extent of 'the defendant's relationship to the forum state' " in determining whether the exercise of personal jurisdiction comports with due process. *Ford*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)). To meet the constitutional due process requirements for personal jurisdiction, Novartis must have "minimum contacts" with Virginia such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kubranov*, 963 F.3d at 351 (internal citations omitted). The Supreme Court has been clear that specific personal jurisdiction requires "a connection between

---

[3] Va. Code Ann. § 8.01–328.1(A)(1).

a plaintiff's suit and a defendant's activities." *Ford*, 141 S. Ct. at 1026. And as explained below, no such connection exists here, and thus the exercise of specific personal jurisdiction over Novartis would therefore exceed the limits of the Due Process Clause. *Id.*

Eli Lilly argues that personal jurisdiction over Novartis is appropriate because Novartis purchased several U.S. patent applications from Genentech, and those applications remain pending with the USPTO. These patent applications are Novartis's sole contact with this District and are plainly insufficient to give rise to specific personal jurisdiction in this case. Eli Lilly argues that because Novartis has continued to seek approval of those pending applications, Novartis has "purposefully availed itself" of conducting business in this District and should be subject to personal jurisdiction. This argument is incorrect, and Novartis's limited interactions with the USPTO fall far short of giving rise to personal jurisdiction. As discussed above, Supreme Court precedent is clear that specific jurisdiction requires a connection between a defendant's in-forum activity and the plaintiff's claim. *See Ford*, 141 S. Ct. at 1025–26. No such connection exists in this case, as the foreign proceeding at issue—a patent infringement proceeding concerning EP '084—does not involve Novartis's activities with the USPTO in this District. Accordingly, the required connection between Eli Lilly's suit and Novartis's in-forum conduct is entirely missing, and an exercise of specific personal jurisdiction over Novartis is inappropriate.

Eli Lilly's argument, if adopted, would also have dramatic and unwarranted repercussions on the availability of foreign discovery in this District pursuant to § 1782. Under Eli Lilly's reasoning, any company that files a patent application with the USPTO would be subject to § 1782 discovery in this District in *any* foreign suit concerning *any* foreign patent tangentially related to the U.S. patent application. This unprecedented expansion of the reach of

10

§ 1782 would transform this District into a clearinghouse for discovery disputes among parties engaged in patent litigation abroad. These dramatic practical consequences further counsel against Eli Lilly's unsupported arguments for expanding the reach of § 1782 beyond its plain text.

In sum, even if Eli Lilly were correct in its argument that § 1782 is satisfied when a party is subject to personal jurisdiction in this District, Eli Lilly would still fail to show that § 1782's statutory requirements are met in this case, as Novartis is not subject to specific personal jurisdiction in the Eastern District of Virginia.

> C. *Even setting aside § 1782's requirements, the discretionary factors relevant in § 1782 applications weigh in favor of denying Eli Lilly's expansive discovery request.*

Even assuming that § 1782's requirements are met in this case, important discretionary factors weigh heavily in favor of vacating Eli Lilly's subpoena. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), the Supreme Court articulated four "factors that bear consideration in ruling on a § 1782(a) request." *Intel*, 542 U.S. at 264. These factors include (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

Consideration of the *Intel* factors in this case counsel against permitting discovery. First, the discovery Eli Lilly seeks appears to be unduly burdensome. Eli Lilly seeks a raft of materials related to Novartis's deal with Genentech, but there is no indication that any of these materials

11

are located in the Eastern District of Virginia or even in the United States.[4] Eli Lilly in essence requests that a substantial volume of data and materials located abroad be brought into the United States for subsequent use in proceedings abroad, a nonsensical result. Second, Eli Lilly has already requested this information in Novartis's European suits, suggesting that this § 1782 effort is an attempt to circumvent foreign discovery procedures. Accordingly, even assuming that the statutory requirements of § 1728 were met (they are not met), consideration of the *Intel* factors weighs in favor of denying Eli Lilly's request for discovery.

## IV.

For the foregoing reasons, the magistrate judge's order is contrary to law and must be vacated.

An appropriate Order reflecting the issues in this Memorandum Opinion will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
January 18, 2022

/s/
T. S. Ellis, III
United States District Judge

---

[4] As discussed previously, counsel for Novartis indicated at the January 7, 2022 telephonic hearing that the materials Eli Lilly seeks to obtain via subpoena are located in Europe, not in the United States.